Nina Eisenberg (SBN 305617)
neisenberg@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Noah M. Schubert (SBN 278696)
nschubert@sjk.law
Kathryn Y. Schubert (SBN 265803)
kschubert@sjk.law
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Tel: 415.788.4220
Fax: 415.788.0161

*Attorneys for Plaintiffs and the Putative Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JASON COOPER and MEGHNA PARIKH, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SLICE TECHNOLOGIES, INC., a Delaware corporation, and UNROLLME INC., a Delaware corporation,<br><br>*Defendants*. | Case No. 17-cv-2340<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Date: September 14, 2017<br>Time: 9:30 a.m.<br>Judge: Hon. Laurel Beeler<br>Consol. Complaint Filed: July 10, 2017 |

# TABLE OF CONTENTS

I. STATEMENT OF ISSUE TO BE DECIDED .................................................................... 1

II. INTRODUCTION ............................................................................................................ 1

III. STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY ........ 3

IV. ARGUMENT .................................................................................................................... 4

    A. The Court Should Deny Defendants' Motion To Transfer As Against California's Strong Public Policy ....................................................... 5

        1. The California Invasion of Privacy Act ........................................................ 5

        2. Defendants Wrongly Argue that a New York Court will Apply California Law .................................................................................. 6

        3. Depriving Plaintiff Parikh and California class members of their CIPA claims contravenes strong California public policy ........................................................................................................ 8

    B. Even if Public Policy Permits the Deprivation of Important California Rights, the Forum Selection Clause is Unenforceable as an Impermissible Contract of Adhesion ......................................................... 10

    C. Consideration Of Section 1404(a)'s Public Interest Factors Also Demonstrates that the Northern District of California is the Appropriate Venue .......................................................................................... 12

V. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    134 S. Ct. 568 (2013) .................................................................................................... passim

*Carnival Cruise Line, Inc. v. Shute*,
    499 U.S. 585 (1991) ........................................................................................................ 11, 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................................................ 9

*M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972) ............................................................................................................ passim

**United States Circuit Court of Appeals Cases**

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
    657 F. App'x 661 (9th Cir. 2016) ........................................................................................... 7

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ................................................................................................ 9

*Fields v. Legacy Health Sys.*,
    413 F.3d 943 (9th Cir. 2005) .................................................................................................. 6

*Patton v. Cox*,
    276 F.3d 493 (9th Cir.2002) ................................................................................................... 6

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ............................................................................................ 4, 9

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) .............................................................................................. 12

**United States District Court Cases**

*Bayol v. Zipcar, Inc.*,
    No. 14-2483, 2014 WL 4793935 (N.D. Cal. Sep. 25, 2014) .................................................. 9

*Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*,
    No. 14-2086, 2014 WL 7892164 (C.D. Cal. July 21, 2014) ............................................. 5, 9

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
    No. 16-0920, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2016) ................................................ 4

*Incline Energy LLC v. Weiner*,
    No. 15-3411, 2015 WL 7351392 (N.D. Cal. Nov. 20, 2015) ................................................. 9

*Madden v. Midland Funding, LLC*,
    No. 11-8419, —F.Supp. 3d—, 2017 WL 758518 (S.D.N.Y. Feb. 27, 2017) ...................... 6

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
    40 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................................... 7

**State Court Cases**

*Am. Online, Inc. v. Superior Court*,
    90 Cal. App. 4th 1 (July 10, 2001) ............................................................................ 5, 9, 10

*Finucane v. Interior Constr. Corp.*,
    695 N.Y.S.2d 322 (App. Div. 1999) .................................................................................. 6

*Hall v. Superior Court*,
    150 Cal. App. 3d 411 (Ct. App. 1983) ............................................................................. 11

*Kearney v. Salomon Smith Barney, Inc.*,
    137 P.3d 914 (Cal. 2006) ............................................................................................*passim*

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) .................................................................................................. 7, 10

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ....................................................................................................... 8

*Samaniego v. Empire Today LLC*,
    205 Cal. App. 4th 1138 (2012) ........................................................................................ 10

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal.4th 899, 911 (2015) .............................................................................................. 12

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ......................................................................................................... 7

*Welsbach Elec. Corp. v. MasTec N. Am., Inc.*,
    825 N.Y.S.2d 692 (2006) .................................................................................................. 6

**Statutes & Constitutions**

18 U.S.C. § 2701 ........................................................................................................................... 3

28 U.S.C. § 1404 .................................................................................................................... 12, 13

28 U.S.C. § 2510 ........................................................................................................................... 3

Cal. Const. art. I, § 1 ..................................................................................................................... 9

Cal. Penal Code § 630 *et seq.* ............................................................................................*passim*

N.Y. Gen. Bus. Law § 349 ............................................................................................... 7,8

Restatement (Second) Conflict of Laws § 80 ................................................................... 10

Restatement (Second) of Conflict of Laws § 187 ............................................................... 7

## I. STATEMENT OF ISSUE TO BE DECIDED

Whether this matter should be transferred to the United States District Court for the Southern District of New York pursuant to a forum selection clause that contravenes the strong public policy of California and represents a contract of adhesion.

## II. INTRODUCTION

Looking for a way to cut down on email spam, Plaintiffs Jason Cooper and Meghna Parikh (collectively "Plaintiffs") signed up for Defendant Unrollme, Inc.'s free service of providing consumers with a streamlined and automated process for unsubscribing them from spam emails. But, what Plaintiffs thought was a free and innocuous service designed to help them avoid email spam, ended up being something far more costly. As it turned out, rather than receiving a free service to rid oneself of email spam, by signing up for Defendant's services, Plaintiffs unwittingly were forced to give up something incredibly valuable: the right to privacy in their email communications. Indeed, as alleged in the Complaint, and under the guise of being a consumer-friendly email management service that identifies and unsubscribes a user from receiving unwanted messages, Defendants – without notice or consent to their customers – scanned user emails to extract a variety of data points, which they then sold to third parties seeking to monetize such information.

Despite admitting in the press that Unrollme was not "explicit enough" in apprising customers of its actual practices, Defendants have responded to the Complaint in the form of a Motion to Transfer Venue to the Southern District of New York (the "Motion to Transfer"). Pointing to the forum selection clause in Unrollme's Terms of Use Agreement (the "Terms of Use") – which, as set forth below, amounts to a contract of adhesion – Defendants argue that the Supreme Court's decision in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013) and the Ninth Circuit and District decisions that came in its wake, require transfer. Defendants are mistaken and the Court should deny their Motion to Transfer for several reasons.

First and foremost, transfer should be denied because it would be against California public policy. To be sure, California's Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* (the

"CIPA")—which Plaintiff Parikh and California class members seek to enforce—has a strong public policy in "protect[ing] the right of privacy of the people of [California],"[1] and New York simply does not provide the same protections to its citizens and certainly not to the citizens of California. Because, as explained more fully below, there is effectively no New York analog to CIPA if the case is transferred, Parikh's CIPA claim won't leave with it, and California citizens will thus be unable to redress the harm the California legislature decided was serious enough to necessitate its passage of CIPA. California has a strong interest in avoiding such a result.

Second, the Court should decline to transfer the case to the Southern District of New York because, as alluded to above, doing so would likely deprive Plaintiff Parikh and the putative California subclass of their ability to pursue claims under CIPA. That is, while Defendants try to suggest that California law could be applied even after transfer,[2] the reality is that if the case is transferred pursuant to the forum selection clause, then it is highly unlikely that the CIPA claims will survive. That's because New York does not recognize such a cause of action and its choice-of-law rules – applying New York substantive law to the dispute – would control. Therefore, if Plaintiff Parikh's and the putative California subclass's claims under CIPA have any hope of surviving, then transfer must be denied.

Third, the Court should deny transfer because it's predicated on enforcement of an unfair adhesion contract procured through the unfair use of bargaining power. In such circumstances, other California courts have declined to enforce a forum selection clause contained in a terms-of-service, like the one at issue here.

Finally, the remaining public interest factors at play – like whether this is a localized controversy and the applicable choice-of-law rules of the transferee forum – also militate against transfer. Thus, Defendants' Motion to Transfer should be denied.

---

[1] See Cal. Penal Code. § 630.
[2] See Defendants' Motion to Transfer at 10:3-13 (As the U.S. Supreme Court has recognized, "federal judges routinely apply the law of a State other than the State in which they sit." Id. This court has transferred California state law claims to an out-of-state venue pursuant to a forum-selection clause.").

## III. STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

On July 10, 2017, Plaintiffs Jason Cooper (a Michigan resident) and Meghna Parikh (a California resident) filed their amended class action complaint (the "Complaint") against Defendants Unrollme and Slice in the Northern District of California. (Dkt. 29.)[3] The Complaint alleges that UnrollMe—a Delaware corporation with its principal place of business in New York—and its parent company, Slice—a Delaware corporation with its principal place of business in San Mateo, California—violated the Electronic Communications Privacy Act ("EPCA"), 28 U.S.C. §§ 2510 *et seq.*, the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.*, and California's Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.*, and committed other privacy violations by unlawfully mining and selling the data collected from the private email accounts of millions of unwitting consumers under the guise of providing a benign "email management" service. (*Id*. ¶¶ 3-5.)

Specifically, Plaintiffs allege that, prior to late 2014, Unrollme operated as a free email management service that generated revenue through advertisements shown to its 1.3 million users. (*Id*. ¶ 18.) In November 2014, however, Unrollme made a sinister change to its business model; instead of selling ad space, Unrollme leveraged Slice's technology to profit from access to its users' email accounts. (*Id*.) That is, Slice enabled Unrollme to "riffle through users' inboxes and inventory valuable emails," and auction the collected trove to the highest bidder. (*Id*. ¶¶ 18, 28.) Despite the change in its business practices, however, Unrollme failed to alter its marketing materials to reflect this sharp change in course. As a result, while consumers continued to believe that they were granting access to their private emails *for the limited purpose* of unsubscribing from spam messages, the truth is, Unrollme accessed its customers' emails for purposes far beyond "email management". (*Id*. ¶ 29.) Tellingly, Unrollme has admitted it was not "explicit enough" in apprising customers of its actual practices. (*Id*. ¶ 30.)

---

[3] Plaintiff Jason Cooper initially filed his putative class action complaint against Defendants on April 26, 2017. (Dkt. 1.) On May 26, 2017, Plaintiff Parikh filed a separate putative class action complaint, alleging similar conduct by Defendants and seeking similar relief. On June 28, 2017, all parties stipulated to and requested that Parikh's action be deemed related to *Cooper*'s original action and the cases were related on July 17, 2017. (Dkt. 30.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS'  3  CASE NO. 17-CV-2340
MOTION TO TRANSFER VENUE

On July 24, 2017, Defendants moved to transfer venue to the Southern District of New York, based on a forum selection and choice of law clause contained in Unrollme's Terms of Use Agreement (the "Terms of Use").[4] Because Unrollme's forum selection clause would deprive Plaintiff Parikh and all of the California class members she represents of their state statutory claims under CIPA, it is unenforceable as against public policy and Defendants' Motion to Transfer must be denied.

## IV. ARGUMENT

Relying on the Supreme Court's recent decision in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas* and subsequent Ninth Circuit precedent, Defendants argue that the forum selection clause in its Terms of Use must be enforced to transfer this case to the Southern District of New York absent an "overwhelming showing by [P]laintiffs that public interest factors warrant setting aside the parties' agreed upon choice of forum." (Mot. at 2-3 (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. at 581 and *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016).) While it is true that *Atlantic Marine* held that a valid forum selection clause should only be refused "under extraordinary circumstances unrelated to the convenience of the parties," 134 S. Ct. at 568, as Defendants openly acknowledge, in certain circumstances—and this case provides a good example—forum selection clauses are not enforced. (*See* Mot. at 6 n.1.)

Most relevant here, a forum selection clause will not be upheld where "enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought" or where "incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power." *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-0920, 2016 WL 4259126, at *2 (N.D. Cal. Aug. 12, 2016); *see also Richards v. Lloyd's of London*, 135 F.3d 1289,

---

[4] The relevant of portion of Unrollme's Terms of Use states:

Governing Law and Jurisdiction
    The laws of New York, U.S.A., excluding New York's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Website. All claims arising out of or relating to these terms or the Website will be litigated exclusively in the federal or state courts of New York, New York, USA, and you and we consent to personal jurisdiction in those courts.

1293 (9th Cir. 1998) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.") (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)); *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12 *as modified* (July 10, 2001) (explaining that California "favors forum selection agreements only so long as they are procured freely and voluntarily").[5]

In the end, the forum selection clause at issue here should not be enforced as it would contravene California's strong public policy by depriving Plaintiff Parikh and members of the California subclass of their statutory claims under the CIPA. And, because the CIPA claims will likely only survive if the case remains in this Court, Defendants' Motion to Transfer must be denied.

### A. The Court Should Deny Defendants' Motion to Transfer as Against California's Strong Public Policy.

#### 1. The California Invasion of Privacy Act.

Concerned with what it viewed to be a "serious and increasing threat to confidentiality of private communications," in 1967, the California Legislature originally enacted the CIPA to protect the right of privacy of the people of California. *See Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 928 (Cal. 2006) (citing Cal. Penal Code. § 630). In its current form, the CIPA expressly prohibits, amongst other things, persons from intentionally, willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California. Cal. Penal Code § 631. It likewise prohibits any person from using, attempting to use or communicating any information obtained in such a manner in any way or for any person and extends liability to any person who aids, agrees with, employs, or conspires with any person(s) to

---

[5] As one California court has aptly noted, the application of *Atlantic Marine*'s analysis "presupposes a contractually *valid* forum-selection clause" *Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*, No. 14-2086, 2014 WL 7892164, at *3 (C.D. Cal. July 21, 2014) (quoting *Atl. Marine Const. Co*, 134 S.Ct. at 581 n. 5) (emphasis added), which does not exist where enforcement of the clause "would contravene strong public policy of the forum in which suit is brought." *Id.*

do, permit, or cause to be done, any of the prohibited acts. *Id.* Importantly—and again reflecting the California Legislature's intent to protect California residents' interest in privacy—the CIPA permits "any person" who has been harmed as a result of a violation of the CIPA to bring a civil action to recover significant monetary penalties. *See* Cal. Penal Code. § 637.2(a),(b) (allowing any person who has been injured to recover the greater of $5,000 per violation or three times the amount of actual damages sustained).

### 2. Defendants Wrongly Argue that a New York Court will Apply California Law.

Although Defendants are quick to assure the Court that "federal judges routinely apply the law of a State other than the State in which they sit" (Mot. at 10), Defendants undertake no choice-of-law analysis to substantiate that this is the likely path this case will take. That's because, under *Atlantic Marine*, when a court transfers a case based on a valid forum selection clause, the transferee court applies the choice-of-law rules of the state in which the transferee court is located (here, the choice-of-law rules of New York). 134 S.Ct. at 582-583. Under New York's choice-of-law rules—specifically the "reasonable relationship" test—"courts will enforce a choice-of-law clause[6] so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Madden v. Midland Funding, LLC*, No. 11-8419, —F.Supp. 3d—, 2017 WL 758518, at *9 (S.D.N.Y. Feb. 27, 2017) (citing *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 825 N.Y.S.2d 692 (2006)). As a result, there is a significant likelihood that, applying New York's choice-of-law rules, the transferee court—here, the Southern District of New York—will apply New York substantive law, as Defendant Unrollme has its principal place of business in New York. (Compl. ¶ 9.) *See Finucane v. Interior Constr. Corp.*, 695 N.Y.S.2d 322, 325 (App. Div. 1999) (finding the fact that one of the parties' principal place of business was located in the selected forum to be a sufficient basis to satisfy the reasonable relationship test).

In contrast, were the case to remain in the present venue, California's choice-of-law rules—which vary from those of New York—would govern. *See Fields v. Legacy Health Sys.*, 413 F.3d

---

[6] Here, the choice of law clause states that "[t]he laws of New York, U.S.A., excluding New York's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Website."

PLAINTIFFS' OPPOSITION TO DEFENDANTS'       6       CASE NO. 17-cv-2340
MOTION TO TRANSFER VENUE

943, 950 (9th Cir. 2005) (citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) ("Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.")). In that instance, the Court could choose to not enforce the choice-of-law provision found in the Terms of Use if it found that the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than [that of] the chosen state . . . ," and then determined that California—rather than New York—has a materially greater interest in the determination of the relevant legal issues. *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1196-97 (N.D. Cal. 2014) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465-66 (1992); § 187(2) of the Restatement (Second) of Conflict of Laws)).[7/8]

This difference is significant as privacy protections afforded under New York law are far less comprehensive. Namely, claims in New York are brought under N.Y. Gen. Bus. Law § 349, which only *generally* prohibits deceptive acts and practices in the conduct of any business, trade, or commerce and requires a plaintiff seeking damages to demonstrate that "a material deceptive act or practice *caused actual, although not necessarily pecuniary, harm*." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (emphasis in original). In contrast, the protections afforded under the CIPA are far more specific and "no separate showing of injury aside from a violation of the privacy rights protected by CIPA is required." *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014).

Furthermore, CIPA's statutory damage provisions are for more robust than those provided for under New York law. Namely, under the CIPA, an injured party is entitled to statutory damages

---

[7] Although not ripe for consideration on the instant Motion, there can be no question that California has a materially greater interest in the outcome of this litigation than any other forum. For one, Plaintiff Parikh is a California resident seeking to apply a specific California state statute to certain class members' claims. In contrast, no named Plaintiff is a resident of New York or has any connection with that state. In fact, the only connection New York has with this litigation is that Unrollme has its principal place of business there, but that fact is offset by the fact that Defendant Slice is located in this District.

[8] Notably, Defendants likewise do not confirm that Plaintiff Parikh and the California class members may avail themselves of CIPA's statutory protections should the case be transferred. For good reason: the more likely outcome is one in which Defendants, after moving to transfer, argue that the Plaintiff Parikh's and the California class members' CIPA claims be dismissed based on Unrollme's choice-of-law provision.

for the greater of: "(1) **_Five thousand dollars ($5,000) per violation_**[, or ](2) Three times the amount of actual damages, if any, sustained by plaintiff." Cal. Penal Code § 637.2(a) (emphasis added). In sharp contrast, under New York's General Business Law, an injured party is entitled "to recover his actual damages or **_fifty dollars_**, whichever is greater . . . " N.Y. Gen. Bus. Law §349(h). (emphasis added).

Thus, because the application of New York choice-of-law rules conflicts with the choice-of-law rules that would be applied in this forum, and would likely result in the waiver of the important protection afforded by the CIPA, the Court should not accept Defendants' argument that a New York Court will permit Plaintiff Parikh and the California class members' CIPA claims to move forward.

### 3. Depriving Plaintiff Parikh and California class members of their CIPA claims contravenes strong California public policy.

The public policy of California is found in its Constitution, legislative enactments, and judicial decisions. *See M/S Bremen*, 407 U.S. at 15 (noting that "strong public policy" may be "declared by statute or by judicial decision"). As noted above, the California Legislature enacted the CIPA in order to "protect the right of privacy of the people of [California]," Cal. Penal Code. § 630, making clear that it intended the law to serve as "a broad, protective invasion-of-privacy statute in response to what it viewed as a serious and increasing threat to the confidentiality of private communications resulting from then recent advances in science and technology that had led to the development of new devices and techniques for eavesdropping upon and recording such private communications." *Kearney*, 137 P.3d at 928 (quoting, in part, Cal. Penal Code. § 630; internal quotations omitted).

Throughout the years, the importance of the CIPA and the Legislature's intent to ensure that its citizens' privacy rights are protected has been confirmed by CIPA's vigorous enforcement, *see, e.g.*, *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (explaining that "secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements"), as well as by the enactment of "new legislation in related areas in an effort to increase the protection of California consumers' privacy in the face of

perceived escalation in the impingement upon privacy interests caused by various business practices." *Kearney*, 137 P.3d at 935 (citing numerous provisions of California's Civil Code affording various privacy rights). California's strong commitment to privacy is further entrenched in its Constitution, which enshrines privacy rights as guaranteed and "inalienable." *See* Cal. Const. art. I, § 1 (stating that "All people are by nature free and independent and have inalienable rights[,]" which include enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*") (emphasis added); *see also Kearney*, 137 P.3d at 935 (collecting cases).

In seeking to transfer this case to New York and ultimately apply New York law to Plaintiffs' claims, Defendants ask this Court to deprive Plaintiff Parikh and California class members of their CIPA claim and their otherwise inalienable privacy rights. That California would approve using clauses buried in adhesion contract to strip thousands of its residents of their statutory rights is difficult to imagine. In reality, California courts routinely reject choice-of-law and/or forum selection clauses that would rob a plaintiff of a remedy otherwise—and here, uniquely—available under California law. *See, e.g.*, *Kearney*, 137 P.3d at 935-37; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) (holding that a forum selection clause was invalid where, "together with the choice of law provision, [it would] effect a waiver of statutory remedies provided by the CLRA"); *Bayol v. Zipcar, Inc.*, No. 14-2483, 2014 WL 4793935 at *5 (N.D. Cal. Sep. 25, 2014) (denying enforcement of a forum selection clause that would "contravene California's strong public policies"); *Frango Grille USA, Inc.*, 2014 WL 7892164 at *3 (denying a motion to transfer where enforcement of the forum selection clause would directly contradict the protections of California's Franchise Relations Act).[9]

---

[9] Effective waiver of statutory claims can contravene public policy even if the statute contains no explicit anti-waiver provisions. *See Richards*, 135 F.3d at 1293 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared *by statute or by judicial decision*.") (quoting *M/S Bremen*, 407 U.S. at 15) (emphasis added); *see also Incline Energy LLC v. Weiner*, No. 15-3411, 2015 WL 7351392 at *3 (N.D. Cal. Nov. 20, 2015) (declining to enforce a forum selection clause based on the long-established "local action doctrine," which provided that disputes regarding rights or interests to real property in California should be litigated in California); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (noting that, "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's

To be sure, in *Kearney*, the California Supreme Court clearly articulated California's "strong and continuing interest in the full and vigorous application of the [CIPA]" to invalidate a choice-of-law provision. 137 P.3d at 935. There, plaintiffs filed a putative class action against a Georgia-based defendant, seeking injunctive relief from the defendant's continuing practice of recording telephone conversations. *Id.* at 917. The court concluded that California law must apply because, "if section 632—and, by analogy, other similar consumer-oriented privacy statutes that have been enacted in California—could not be applied effectively, "the interests of California would be severely impaired." *Id.* at 937. The Court further noted that where California residents are unable to access the statutory protections in which California has a "strong and continuing interest," California's public policy is flagrantly—and inappropriate—disregarded. *Id.* at 935-36.

Here, application of the choice of forum provision contained in Unrollme's Terms of Use would contravene California's public policy by stripping Plaintiff Parikh and California class members of their fundamental privacy protections with no comparable remedy under New York law. As a result, Defendants should not be permitted to use Unrollme's Terms of Use to sidestep California's important policy considerations and Defendants' Motion should be denied. *See M/S Bremen*, 407 U.S. at 15.

### B. Even if Public Policy Permits the Deprivation of Important California Rights, the Forum Selection Clause is Unenforceable as an Impermissible Contract of Adhesion.

Even if—contrary to the actual facts—California had not previously expressed a strong interest in providing its residents the protection of the CIPA, California permits "forum selection agreements **only** so long as they are procured **freely and voluntarily**." *Am. Online, Inc.*, v. 90 Cal. App. 4th at 1 (emphasis added). Where a forum selection clause was procured through unfair use of bargaining power, as in an adhesion contract, California will not enforce such an agreement. *See Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1148 (2012); Rest.2d, Conflict of Laws § 80, com. a. ("[A forum-selecting provision will be disregarded if it is the result of overreaching or of the unfair use of unequal bargaining power . . .").

---

right to pursue [waivable] statutory remedies," the Supreme Court "would have little hesitation in condemning the agreement as against public policy").

Here, Defendants admit that "[i]t was not possible for plaintiffs to create an account with Unrollme without affirmatively assenting to the Terms of Use [ ], which contains a mandatory forum selection clause." (Mot. at 2.) As a result, it is clear that Defendants "dictate[d] the terms of the agreement" and Plaintiffs had no opportunity to strike "a bargain that [was] tailored to their particular needs." *Nedlloyd Lines B.V.*, 3 Cal. 4th at 485 (explaining that a forum state's interest in policing contractual terms for fraud or overreaching is peaked precisely in "a relationship in which one party enjoys a superior bargaining position so that it is able to dictate the terms of the agreement – and the weaker party seeks not profit but an essential service"). Moreover, in signing up for Defendants' email management service, Plaintiffs did not "seek profit," but rather an "essential service" – communication. *Id.* As is pled in the Complaint, while millions of Americans have come to rely on email as a primary form of communication for their business and personal lives, their inboxes are increasingly being bogged down with the over 260 billion spam emails and advertisements sent daily. Defendant UnrollMe sought to capitalize on these frustrations and was founded purportedly to clean up your inbox. (Compl. ¶ 1 (internal citations omitted).) *See Nedlloyd Lines B.V.*, 3 Cal. 4th at 485 (noting that one party is more likely to "enjoy[] a superior bargaining position" when the other "party seeks not profit but an essential service").

Therefore, on all counts, Plaintiffs' assent to the forum selection clause contained in Unrollme's Terms of Use was procured through an unfair use of bargaining power and deception, in that Plaintiffs had no opportunity to negotiate the terms and were ultimately misled as to the services that Unrollme would be providing. On similar facts, California courts have refused to enforce terms of use like the one at issue here. *See, e.g., Hall v. Superior Court*, 150 Cal. App. 3d 411, 417-419 (Ct. App. 1983); *Am. Online, Inc.*, 90 Cal. App. 4th at 18 (2001) (declining to disturb lower court holding that underlying contract was an "unconscionable adhesion contract").

Defendants nevertheless attempt to persuade the Court to enforce Unrollme's forum selection clause by citing *Carnival Cruise* for the proposition that "unequal bargaining power between the parties does not make a forum selection clause unenforceable." (Mot. at 3 (citing *Carnival Cruise Line, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).) A more contextualized reading of *Carnival Cruise*, however, reveals that a narrower view hews closer to the Supreme Court's intent.

To be sure, in *Carnival Cruise* the Court "emphasi[zed] that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness," e.g., judicial scrutiny is appropriate to determine (a) whether the forum-selection clause "discourage[es] [plaintiffs] from pursuing legitimate claims"; (b) whether "accession to the forum clause [was obtained] by fraud or overreaching"; and (c) whether plaintiffs "retained the option of rejecting the contract with impunity." 499 U.S. at 595. Here, as the forum selection clause would not only discourage, but rather, entirely bar Plaintiff Parikh and California class members from enforcing their important state law claims, *Carnival Cruise* should carry little weight.

Defendants' citation to *Tompkins* is similarly unavailing in generating a blanket rule. The *Tompkins* Court merely reiterates that "[a]n evaluation of unconscionability is highly dependent on context." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 911 (2015)). As *Tompkins* made clear, California courts still must "examine the context in which the contract was formed and the respective circumstances of the parties as they existed at the formation of the agreement." *Id.* (internal quotations and citations omitted). Unlike in *Tompkins*, where the only hurdle to the plaintiffs' claims was the added expense of cross-country airfare to San Francisco, Plaintiffs do not claim "mere inconvenience or additional expense." *Id.* at 1029. Rather, here, effectuating the forum selection clause would bar Plaintiff Parikh and California class members from the statutory protections to which they are entitled, making the New York court "unavailable or unable to accomplish substantial justice." *Id.* (explaining that, despite the modern trend to favor valid forum selection provisions, "[a] clause would [still] be unreasonable if the forum selected would be unavailable or unable to accomplish substantial justice") (citations and quotations omitted). As such, *Tompkins* is similarly unpersuasive.

### C. Consideration of Section 1404(a)'s Public Interest Factors also Demonstrates that the Northern District of California is the Appropriate Venue.

Finally, in addition to the fact that the forum selection and choice of law provisions are unenforceable, Section 1404(a)'s public interest factors strongly militate in favor of denying transfer as well. *See Atl. Marine Const.*, 134 S. Ct. at 581 n.6 & 582 (explaining the public interest

factors properly considered in this context to include "the local interest in having localized controversies decided at home," "the interest in having the trial of a diversity case in a forum that is at home with the law," court congestion, and the transferee court's choice-of-law rules).

Most importantly, and as discussed in greater detail above, Section 1404(a)'s public factors council against transfer as California has a "strong and continuing interest in the full and vigorous application of the provisions" of the CIPA. *Kearney*, 137 P.3d at 935. Moreover, the instant case concerns—at least in part—the application of a California state statute to California residents' claims for violations committed by a California company–making the action a "localized controvers[y]." *See Atl. Marine Const.*, 134 S. Ct. at 581 n.6. Finally, because there is a significant likelihood that New York will interpret its choice-of-law rules to mandate the application of New York law, California's public interest in ensuring that its residents have access to the statutory protections offered under CIPA is even greater. Thus, consideration of the public factor considerations of Section 1404(a) further demonstrates that Defendants' Motion is without merit.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs Jason Cooper and Meghna Parikh respectfully request that this Court enter an Order (i) denying Defendants' Motion to Transfer in its entirety, and (ii) awarding such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**JASON COOPER** and **MEGHNA PARIKH**,
individually and on behalf of all others similarly situated,

Dated: August 14, 2017       By: /s/ Nina Eisenberg
                                 One of Plaintiffs' Attorneys

Nina Eisenberg (SBN 305617)
neisenberg@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Noah M. Schubert (SBN 278696)
nschubert@sjk.law
Kathryn Y. Schubert (SBN 265803)

kschubert@sjk.law
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Tel: 415.788.4220
Fax: 415.788.0161

*Attorneys for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I, Nina Eisenberg, hereby certify that on August 14, 2017, I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendants' Motion to Transfer Venue*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Nina Eisenberg