UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JASON COOPER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SLICE TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-02340-LB<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: ECF No. 32 |

**INTRODUCTION**

This is a motion to transfer a class-action data-privacy lawsuit to the Southern District of New York under 28 U.S.C. §1404(a) based on a forum-selection clause.[1] The plaintiffs signed up for UnrollMe's free web-based email-management service and claim that UnrollMe impermissibly scraped data, which its parent company Slice Technologies sold to third parties, in violation of federal and California statutes.[2] UnrollMe requires users to agree to its Terms of Use as a

---

[1] Motion – ECF No. 32; First Am. Compl. ("FAC") – ECF No. 29. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents. All parties consented to magistrate-judge jurisdiction. Consent Forms – ECF Nos. 17–19, 39.

[2] FAC – ECF No. 29 at 11(¶ 32), 15–19 (¶¶ 38–58).

ORDER – No. 17-cv-02340-LB

precondition to creating an account.[3] The Terms of Use include a forum-selection clause for federal or state courts in New York.[4] The court grants the motion, enforces the forum-selection clause, and transfers the case to the Southern District of New York.

## STATEMENT

### 1. UnrollMe's Email-Management Service

UnrollMe is a free service for consumers to "purportedly rid their email inboxes of junk by using UnrollMe's 'email management' service to mass unsubscribe from spam messages and to group categories of emails into a single email digest that would be sent to the user daily."[5] "In exchange, UnrollMe could display daily advertisements to the users via the digest and offer them new productivity products or services over time."[6]

Slice Technologies bought UnrollMe in 2014.[7] It is a data-mining company.[8] UnrollMe then began selling access to data from its "unwitting users' email accounts," and Slice Technologies sells the data to third parties.[9] For example, Slice Technologies sold emails from users who used the Lyft ridesharing application to Lyft's competitor Uber.[10] "UnrollMe does not adequately disclose its true business model" to users.[11] Instead, UnrollMe disguises itself as an email-management service to mislead users to sign up for the service so that it (and Slice) can access their data.[12] The plaintiffs acknowledge the disclosure about data collection in UnrollMe's Privacy Policy, but they contend that the disclosure is inconsistent with UnrollMe's representations that

---

[3] Kogan Decl. – ECF No. 32-1 at 3–4 (¶¶ 9–10).

[4] Motion – ECF No. 32 at 6.

[5] FAC – ECF No. 29 at 4 (¶ 14).

[6] *Id.*

[7] *Id.* at 5 (¶ 15).

[8] *Id.*

[9] *Id.* at 5 (¶ 18).

[10] *Id.* at 9 (¶ 28), 11–14 (¶¶ 33–36), 16 (¶ 48).

[11] *Id.* at 9 (¶ 20).

[12] *Id.* at 9–11 (¶¶ 20–29).

access to users' emails is to manage spam and advertisements to achieve "a cleaner inbox."[13] For this reason, the plaintiffs claim that the defendants' access to their emails for data scraping exceeded the scope of their permissions.[14]

## 2. UnrollMe's Registration Process and the Forum-Selection Clause

Users — including the named plaintiffs — create a free account by registering with a valid email address and expressly assenting to UnrollMe's Terms of Use.[15]

During the registration process, the plaintiffs "[were] presented with a screen with a box next to the statement 'I agree to the terms and the privacy policy.'"[16] UnrollMe embedded hyperlinks to the Terms of Use and Privacy Policy in that statement.[17] Users had to "check the box next to the statement 'I agree to the terms and the privacy policy' to enable the 'CONTINUE' button and be able to create an account."[18] This is the pop-up screen:[19]



A user cannot register for UnrollMe without (1) checking the box next to "I agree to the terms and privacy policy" to affirm assent to the Terms of Use and Privacy Policy and (2) separately

---

[13] FAC – ECF No. 29 at 9–11 (¶¶ 27–32).
[14] Id.
[15] Kogan Decl. – ECF No. 32-1 at 2 (¶¶ 4–5).
[16] Id. at 3 (¶ 9) (emphasis in original); see also FAC – ECF No. 29 at 6–7 (¶¶ 21–22).
[17] Kogan Decl. – ECF No. 32-1 at 3 (¶ 9).
[18] Id.
[19] Id., Ex. 1.

clicking the "Continue" button to complete the sign-up process.[20] Ms. Parikh and Mr. Cooper both completed this process.[21]

The Terms of Use have the following forum-selection clause:

> The laws of New York, U.S.A., excluding New York's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Website. All claims arising out of or relating to these terms or the Website will be litigated exclusively in the federal or state courts of New York, New York, USA, and you and we consent to personal jurisdiction in those courts.[22]

**3. The Plaintiffs' Lawsuit Against UnrollMe and Slice Technologies**

The two named plaintiffs are Jason Cooper (from Michigan) and Meghna Parikh (from California).[23] They assert federal claims on behalf of themselves and national classes for violations of (1) the Electronic Communications Privacy Act ("ECPA"), 28 U.S.C. § 2510 *et seq.*, for the defendants' alleged interception of their communications and (2) the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, for the defendants' alleged accessing of their stored communications.[24] Ms. Parikh asserts a California claim on behalf of herself and a California subclass for a violation of California's Invasion of Privacy Act, Cal. Penal. Code § 630 *et seq.*[25] Both plaintiffs allege state-law claims on behalf of themselves and national classes for unjust enrichment and violations of privacy based on intrusion.[26]

\* \* \*

---

[20] Kogan Decl. – ECF No. 32-1 at 3–4 (¶¶ 9–11).
[21] *Id.* at 2–3 (¶¶ 4–6).
[22] *Id.* at 2 (¶ 5), 4 (¶¶ 12–13); Terms of Use, Exs. 2 & 3 – ECF No. 32-2 at 3–16.
[23] FAC – ECF No. 29 at 3 (¶¶ 6–7).
[24] *Id.* at 19–22 (¶¶ 59–79).
[25] *Id.* at 22–24 (¶¶ 80–88).
[26] *Id.* at 24–25 (¶¶ 89–99).

ORDER – No. 17-cv-02340-LB  4

## GOVERNING LAW

A defendant may file a motion under 28 U.S.C. § 1404(a) to enforce a forum-selection clause and transfer the case to the contractually agreed-upon forum. *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013). "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system . . . ." *Id.* at 580. The analyses under § 1404(a) and *forum non conveniens* are substantively identical. *See id.* ("Section 1404(a) 'did not change "the relevant factors" which federal courts used to consider under the doctrine of *forum non conveniens* . . . .'") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 37 (1988) (Scalia, J., dissenting)).

Normally, *forum non conveniens* analysis requires the court to evaluate the parties' "private interests," along with "public-interest considerations," and to decide whether, "on balance," sending the case to a new venue would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." *Atlantic Marine*, 134 S. Ct. at 579, 581 (citing § 1404(a)). "The calculus changes, however," when transfer is sought under a "valid forum-selection clause." *Id.* at 581. In such a case, the court "should not consider arguments about the parties' private interests." *Id.* at 582. The Supreme Court has held:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Id.* "As a consequence, a district court may consider arguments about public-interest factors only." *Id.* There are five public-interest factors considered by courts in this circuit:

> (1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum.

*Bridgemans Serv. Ltd. v. George Hancock, Inc.*, No. 14-CV-1714-JLR, 2015 WL 4724567, at *4 (W.D. Wash. Aug. 7, 2015) (citing *Boston Telecomm. Group v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009)). The Supreme Court has identified essentially the same set of public interests. *See Atlantic Marine*, 134 S. Ct. at 581, n.6 ("Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies

decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.") (quotation omitted).

"The party challenging a valid forum selection clause must show that the public interest factors 'overwhelmingly disfavor' enforcement . . . ." *Bridgemans*, 2015 WL 4724567, at *4 (quoting *Atlantic Marine*, 134 S. Ct. at 583). "A proper application of § 1404(a) requires that a forum selection clause be given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 134 S. Ct. at 579 (internal quotation marks and citation omitted); *see id.* at 575, 581 (When a party moves to enforce such a clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."); *accord Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) ("Because forum selection clauses are presumptively valid, they should be honored 'absent some compelling and countervailing reason.'") (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).

"The Ninth Circuit has identified three 'compelling' reasons that would permit a court to disregard a forum selection clause . . . ." *Premiere Radio Networks, Inc. v. Hillshire Brands Co.*, No. 12-CV-10199-CAS, 2013 WL 5944051, at *2 (C.D. Cal. Nov. 4, 2013) (citing *Murphy*, 362 F.3d at 1140). These reasons are:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so inconvenient that the complaining party will be practically deprived of its day in court; or
> (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Bridgemans*, 2015 WL 4724567, at *2 (citing *Murphy*, 362 F.3d at 1140 and *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996)); *accord, e.g.*, *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998). These departures from presumed validity are "construed narrowly." *Argueta*, 87 F.3d at 325. "Public policy," moreover, "strongly favors the enforcement of forum selection clauses." *Koken v. Stateco Inc.*, No. 05-CV-3007-JF, 2006 WL 2918050, at *8 (N.D. Cal. Oct. 11, 2006) (citing *Argueta*, 87 F.3d at 325); *accord, e.g.*, *E. & J. Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1126 (E.D. Cal. 2006) ("[B]oth Supreme Court and Ninth Circuit cases clearly establish that strong public policy supports the enforcement of forum

selection clauses.") (compiling cases). "The party challenging the clause [thus] bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15); *accord, e.g.*, *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause . . . .").

**ANALYSIS**

The plaintiffs do not dispute that they assented to UnrollMe's Terms of Use and its forum-selection clause. Instead, they advance three arguments against transfer. First, they argue transfer is against California public policy because the choice-of-law provision selects New York law, New York has less robust privacy laws than California's Invasion of Privacy Act (with its statutory and actual treble damages), and transfer denies the California subclass the ability to pursue the California claim. Second, they argue the forum-selection clause is imbedded in an adhesion contract. Third, they assert that transfer is otherwise against the public-interest factors at play in the transfer/*forum non conveniens* analysis.[27]

First, the forum-selection clause determines where the case is heard and is separate and distinct from choice-of-law provisions that are not before the court. *East Bay Women's Health, Inc. v. gloStream, Inc.*, No. 14-CV-0712-WHA, 2014 WL 1618382, at *3 (N.D. Cal. Apr. 21, 2014). "Courts in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy." *Rowen v. Soundview Commc'n, Inc.*, No. 14-CV-5530-WHO, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015) (citing *Marcotte v. Micros Sys., Inc.*, No. 14-CV-1372-LB, 2014 WL 4477349, at *8 (N.D. Cal. Sept. 11, 2014)). The transferee court decides the choice-of-law issues.

The California plaintiff asserts that it is unlikely that a New York court will adjudicate the California statutory claim because, under New York's choice-of-law rules, it is significantly likely

---

[27] Opposition – ECF No. 34 at 6–7.

1 that the transferee court will apply New York substantive law based on UnrollMe's principal place
2 of business in New York.[28] (The plaintiff contends that the test is a reasonable-relationship test,
3 meaning the court enforces a choice-of-law clause if the chosen law bears a reasonable
4 relationship to the parties or the transaction.[29]) The defendants counter with examples of district
5 courts in New York adjudicating the California statutory claim on the merits.[30]

The court is not convinced. The plaintiff's argument is speculative. Slice Technologies — the seller of the data — has its principal place of business in California.[31] The remedies under the ECPA provide similar and maybe larger relief.[32] In any event, the plaintiff's speculation about the transferee court's application of the choice-of-law rules does not meet the "heavy burden" of establishing that the forum-selection clause is unenforceable. The issue is for the transferee court.

Moreover, the California plaintiff has not established that having her case heard in New York contravenes a strong public policy of California. She cites *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) (per curiam). There, the Ninth Circuit held that AOL's subscription agreement, which required subscribers to file lawsuits in Virginia state court, violated public policy when it was applied to California residents who brought a class-action lawsuit under California consumer-protection laws. 552 F.3d at 1079–80, 1083–84. Virginia did not allow consumer disputes to be tried as class actions, which foreclosed the lawsuit entirely. This violated California's strong public policy favoring consumer class actions and disallowing waiver of consumer remedies. *Id.* at 1083–84 & n.12. By contrast, there is no foreclosure of remedies here given the overlapping federal and state violations (including a claim under N.Y. Gen. Bus. Law § 349).[33]

Second, the plaintiffs' unequal bargaining power does not render the forum-selection clause unenforceable. Unequal bargaining power is routine in form contracts. *Carnival Cruise Lines, Inc.*

---

[28] *Id.* at 7.

[29] *Id.* at 11 (citation omitted).

[30] Reply – ECF No. 37 at 10 (collecting cases).

[31] FAC – ECF No. 29 at 3 (¶ 8).

[32] Reply – ECF No. 37 at 13 & nn. 4–5 (analyzing statute and caselaw).

[33] *Id.* at 7.

ORDER – No. 17-cv-02340-LB   8

*v. Shute*, 499 U.S 585, 593 (1991). The issue is whether a consumer has adequate notice. *Id.* at 590; *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1029 (9th Cir. 2016). The Ninth Circuit has enforced forum-selection clauses in online consumer contracts like the one here. *Tompkins*, 840 F.3d at 1020–21 (consumers could — but did not have to — click on a link to read the Terms of Service and had to click on a box agreeing to the Terms of Service). The plaintiffs do not charge fraud or overreaching. *Tompkins* drives the outcome here.

This brings us to the *forum non conveniens* analysis itself. This inquiry weighs the public-interest factors that the Supreme Court and the Ninth Circuit have identified: local interest in the lawsuit, familiarity with the governing law, burden on the courts, and costs. *See, e.g.*, *Bridgemans*, 2015 WL 4724567, at *4; *Atlantic Marine*, 134 S. Ct. at 581–84. To block the transfer, the plaintiffs must show that these factors "overwhelmingly disfavor" enforcing the forum-selection clause. *Bridgemans*, 2015 WL 4724567, at *4 (internal quotation marks omitted) (quoting *Atlantic Marine*, 134 S. Ct. at 583). Public interests will "rarely defeat" a motion to enforce a forum-selection clause, however, so that the latter must be "given controlling weight in all but the most exceptional cases." *Bridgemans*, 2015 WL 4724567, at *4 ("rarely defeat"); *Atlantic Marine*, 134 S. Ct. at 579, 581 ("exceptional"); *Stewart Org.*, 487 U.S. at 33 (same).

The public-interest factor here is California's interest in enforcement of its laws. As discussed above, it does not defeat the enforcement of the forum-selection clause. The claims are mostly federal, and the district court in New York is capable of applying California law. *See Bridgemans*, 2015 WL 4724567, at *5. As for burdens on the court and costs, the court deems the factors neutral.

\*   \*   \*

Ultimately, these public-interest factors do not "overwhelmingly disfavor" enforcing the forum-selection clause. *See Atlantic Marine*, 134 S. Ct. at 583. This is not a "rare[]" and "most exceptional" case in which the court should ignore such a clause. *See id.* at 579, 582.

## CONCLUSION

The court sees no "compelling" reason not to enforce the parties' forum-selection clause. Nor does it find this a "most exceptional case" in which public-interest considerations "overwhelmingly disfavor" enforcing that clause. The court grants the defendants' motion to transfer and transfers the lawsuit to the Southern District of New York.

This disposes of ECF No. 32.

**IT IS SO ORDERED.**

Dated: September 14, 2017

LAUREL BEELER
United States Magistrate Judge